## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

OTHA JOHNSON

      Plaintiff,

v.                                                              Case No:  6:16-cv-941-Orl-40TBS

CITY OF DAYTONA BEACH, et al.,

      Defendants.

_____

### <u>ORDER</u>

    This cause comes before the Court on Defendants' Motion to Dismiss the Plaintiff's Complaint (Doc. 19), filed July 5, 2016. Plaintiff responded in opposition on July 20, 2016. (Doc. 27). Upon consideration, Defendants' motion to dismiss will granted in part and denied in part.

## I.    BACKGROUND

### A.    Facts[1]

    On March 1, 2015, Defendants, Brian Biddix ("Officer Biddix") and Dawn Marie Harris ("Officer Harris"), were on duty as police officers for the Daytona Beach Police Department. At approximately 8:05 p.m. that day, Officer Biddix and Officer Harris arrived at 900 Peninsula Drive, Daytona Beach, Florida, in response to a disturbance call involving a female. (Doc. 1, ¶ 31). Upon arriving, Officer Biddix and Officer Harris found Kayla Strunk asleep in the driver's seat of a vehicle that was parked in the parking lot at

---

[1]  This account of the facts is taken from Plaintiff's Complaint (Doc. 1), the allegations of which the Court must accept as true in considering Defendants' Motion to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

the apartment complex where Plaintiff, Otha Johnson ("Johnson"), lived. (Doc. 1, ¶¶ 32–33). When Officers Biddix and Harris approached Ms. Strunk, Johnson exited his apartment and informed the officers that Ms. Strunk was intoxicated and that he had argued with her about driving due to her intoxicated state. (*Id.* ¶ 34). Officer Harris asked Johnson whether Ms. Strunk was his girlfriend, and Johnson responded that he and Ms. Strunk were not romantically involved, but that they were friends. (*Id.* ¶ 35).

Officer Harris then demanded information from Johnson, informed him that there was a criminal investigation, and threatened him with arrest if he did not comply with her demands. (*Id.* ¶ 36). Johnson provided his name, at which point Officer Harris demanded to see his identification. (*Id.* ¶ 37). Johnson informed Officer Harris that he had identification in his apartment and began to walk toward his apartment. (*Id.* ¶ 38). Officer Harris advised Johnson that he was not permitted to leave, informed him he was being detained for investigation and threatened him with arrest for obstruction of justice and disorderly conduct. (*Id.* ¶ 39). Officer Harris then contacted Defendant, Timothy Blowers ("Sergeant Blowers"), her sergeant and supervisor, and requested assistance. (*Id.* ¶ 40). Upon arriving a short time later, Sergeant Blowers placed Johnson under arrest by seizing him and handcuffing his hands behind his back. (*Id.* ¶¶ 41–42). During the course of the arrest, Officer Harris placed Johnson in a choke hold, struck him in the face, and caused Johnson to contact the body of the police car as he was being placed into the vehicle. (*Id.* ¶ 45). At no time did Johnson resist arrest, refuse to be handcuffed, attempt to escape, or otherwise interfere with his arrest by Officer Biddix, Officer Harris, and Sergeant Blowers. (*Id.* ¶ 47).

Johnson was ultimately charged with breaching the peace and resisting an officer without violence. (*Id.* ¶ 59). Johnson was incarcerated and held in the Volusia County Jail

from March 1, 2015 until June 10, 2015. (*Id.* ¶ 60). On June 10, 2015, the State of Florida dismissed all criminal charges against Johnson. (*Id.* ¶ 68).

### B.    Procedural History

Johnson initiated this lawsuit on May 31, 2016 against Officer Biddix, Officer Harris, Sergeant Blowers, the City of Daytona Beach (the "City"), and the City's Chief of Police, Michael Chitwood ("Chief Chitwood"). In his Complaint, Johnson brings eleven federal constitutional claims pursuant to 42 U.S.C. § 1983 and eleven state law tort claims.

As for his federal claims, Counts II and III allege that the City and Chief Chitwood failed to properly train and supervise its officers regarding their law enforcement duties; Counts IV, V, and VI, allege that Officer Biddix, Officer Harris, and Sergeant Blowers unlawfully arrested Johnson; Counts VII, VIII, and IX allege that Officer Biddix, Officer Harris, and Sergeant Blowers used excessive force against Johnson; and Counts X, XI, and XII allege that Officer Biddix, Officer Harris, and Sergeant Blowers maliciously procured Johnson's prosecution.

As for Johnson's state law claims, Count I alleges that Officer Biddix, Officer Harris, and Sergeant Blowers entered into a conspiracy to deprive him of various federal constitutional rights; Counts XIII, XIV, and XV allege that Officer Biddix, Officer Harris, and Sergeant Blowers assaulted Johnson; Counts XVI, XVII, and XVIII allege that Officer Biddix, Officer Harris, and Sergeant Blowers battered Johnson; Counts XIX and XX allege that Officer Harris and Sergeant Blowers defamed Johnson; and Counts XXI and XXII allege that the City and Chief Chitwood negligently supervised and retained Officer Biddix, Officer Harris, and Sergeant Blowers.

Defendants now move to dismiss Johnson's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    STANDARD OF REVIEW

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. In order to survive a motion to dismiss made under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges enough facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The mere recitation of the elements of a claim are not enough and the district court need not give any credence to legal conclusions that are not supported by sufficient factual material. *Id.* District courts must accept all well-pleaded allegations within the complaint as true and read the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

## III.    DISCUSSION

Officer Biddix, Officer Harris, and Sergeant Blowers move to dismiss Johnson's federal constitutional claims against them on the ground that they are entitled to qualified immunity and to dismiss Johnson's state law tort claims against them on the ground that they are entitled to individual immunity under Florida law. Chief Chitwood also asserts that he is entitled to individual immunity on Johnson's state law tort claim against him, and further moves to dismiss Johnson's *Monell* claim against him as duplicative of the *Monell* claim against the City. Finally, the City moves to dismiss Johnson's *Monell* claim and state law tort claim against it for failing to state claims for relief. The Court addresses Defendants' arguments in the most logical order.

A.   **Whether Officer Biddix, Officer Harris, and Sergeant Blowers are Entitled to Qualified Immunity on Johnson's Federal Constitutional Claims (Counts IV–XII)**

First, Officer Biddix, Officer Harris, and Sergeant Blowers assert that they are entitled to qualified immunity on Counts IV through XII, in which Johnson alleges the violation of various constitutional rights. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)) (internal quotation marks omitted). A government official acts within his discretionary authority when he "perform[s] a legitimate job-related function . . . through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. To do so, the plaintiff must demonstrate that the facts of the case, if proven true, would make out the violation of a clearly established constitutional right. *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016). Because qualified immunity provides a complete defense from suit, "courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).

The facts alleged in the Complaint clearly show that Officer Biddix, Officer Harris, and Sergeant Blowers were acting within the scope of their discretionary authority at all

relevant times. Officers Biddix and Harris arrived at Johnson's apartment complex in response to a disturbance call. The officers thereafter questioned Johnson relative to the disturbance call, sought Johnson's identification, and detained and arrested Johnson. Similarly, Sergeant Blowers responded to Officer Harris' request for backup and assisted in Johnson's detention and arrest. These acts are legitimate police functions which were within Officer Biddix's, Officer Harris', and Sergeant Blowers' powers to perform. The burden therefore shifts to Johnson to show that qualified immunity is inappropriate by alleging sufficient factual material to warrant the reasonable inference that Officer Biddix, Officer Harris, and Sergeant Blowers violated his clearly established constitutional rights.

### 1. False Arrest (Counts IV, V, and VI)

The Fourth Amendment to the United States Constitution affords a number of clearly established protections that are relevant to this case.[2] First, the Fourth Amendment prohibits arrests that are not supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville*, 608 F.3d

---

[2] The Fourth Amendment provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment's guarantees are made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

724, 734 (11th Cir. 2010). Although a police officer who makes an arrest without probable cause violates the Fourth Amendment, the officer is nevertheless entitled to qualified immunity if he or she had "arguable probable cause." *Id.* Arguable probable cause requires the court to ask "whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[s] *could have believed* that probable cause existed to arrest.'" *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (quoting *Lee*, 284 F.3d at 1195). "Whether an officer possesses . . . arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Brown*, 608 F.3d at 735. An officer need not hold proof of every element of a crime to have arguable probable cause. *Id.* All that is required is the officer's objectively reasonable belief that probable cause could exist to arrest the suspect. *Skop*, 485 F.3d at 1137.

Accepting the facts alleged in the Complaint as true, none of the officers in this case had arguable probable cause to arrest Johnson on March 1, 2015. Johnson's account indicates that he complied with all of Officer Harris' requests for information relative to her investigation. (Doc. 1, ¶¶ 36–38). The facts also establish that Johnson never resisted the officers, never attempted to flee, and never interfered in any way with the officers' investigation. (*Id.* ¶ 47). Lastly, none of the officers had received any information—whether from witnesses, complainants, or otherwise—that Johnson was involved in a crime. (*Id.* ¶¶ 43–44). Johnson's conduct as alleged in the Complaint is insufficient to warrant a reasonably cautious police officer in the same circumstances to believe that he had committed or was about to commit a crime. Accordingly, Officer Biddix, Officer Harris, and Sergeant Blowers are not entitled to qualified immunity on Johnson's false arrest claims.

## 2.    Excessive Force (Counts VII, VIII, and IX)

Second, the Fourth Amendment protects against the use of excessive force by police officers during the course of an arrest. *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011). A claim of "excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person is properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *See Graham v. Connor*, 490 U.S. 386, 388 (1989). The reasonableness of a particular use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham*, 490 U.S. at 394). In measuring whether a specific use of force is excessive, a court must consider myriad factors, including (1) the need for the force, (2) the proportionality of the force used in relation to its need, (3) the extent of the injury inflicted on the arrestee, and (4) whether the force was applied maliciously or sadistically. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Liability under § 1983 may also extend to an officer who did not actively participate in using force but failed or refused to intervene against officers who were. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002); *see also Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.").

The facts alleged in the Complaint, if proven true, would establish that Officer Harris applied excessive force when she detained and arrested Johnson.  Johnson states that at no time did he resist arrest, refuse to be handcuffed, attempt to escape, or otherwise interfere with his arrest. (Doc. 1, ¶¶ 47–48). Nevertheless, Johnson alleges that

Officer Harris placed him in a chokehold, struck him in the face, and caused his body to contact a police vehicle. (*Id.* ¶ 45). A reasonable officer in the same circumstances would not have needed to use such force against a citizen who was complying with the officer's lawful commands.  And there should be no doubt that the prohibition against the use of force on a law abiding citizen is clearly established; any reasonable officer would know that using force on an individual who was complying with the officer's commands violated the Fourth Amendment. Officer Harris is therefore not entitled to qualified immunity on the excessive force claim against her.

However, Johnson alleges no facts which permit the reasonable inference that either Officer Biddix or Sergeant Blowers used excessive force against Johnson. Johnson does not assert that Officer Biddix or Sergeant Blowers joined Officer Harris in placing Johnson in a chokehold, striking him in the face, or throwing him against a police vehicle. Further, Johnson does not allege that Officer Biddix or Sergeant Blowers failed or refused to protect Johnson from Officer Harris' use of excessive force despite their ability to do so. In short, there are no facts alleged in the Complaint indicating that Officer Biddix or Sergeant Blowers are in any way liable for Officer Harris' use of force against Johnson.[3] Officer Biddix and Sergeant Blowers are therefore entitled to qualified immunity on Johnson's excessive force claims against them (Counts VII and IX).

### 3.    Malicious Prosecution (Counts X, XI, and XII)

Lastly, Officer Biddix, Officer Harris, and Sergeant Blowers all move to dismiss Johnson's malicious prosecution claims on the ground that Johnson cannot state a claim for relief. To state a claim for malicious prosecution under § 1983, a plaintiff must allege

---

[3]   While Johnson argues in his response to Defendants' motion to dismiss that Officer Biddix, Officer Harris, and Sergeant Blowers entered into a conspiracy to use excessive force against him, this is not alleged in the Complaint.

sufficient facts demonstrating "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [the] Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). Officer Biddix, Officer Harris, and Sergeant Blowers contend that Johnson cannot establish the requisite Fourth Amendment violation. However, as the Court explained in Section III.A.1, *supra*, the facts alleged in the Complaint demonstrate that Officer Biddix, Officer Harris, and Sergeant Blowers violated Johnson's right under the Fourth Amendment right to be free from unlawful arrests. Johnson therefore alleges a violation of the Fourth Amendment right to be free from unreasonable seizures sufficient to state a claim for malicious prosecution under § 1983.

### B. Whether Johnson States *Monell* Claims Against the City and Chief Chitwood (Counts II and III)

Chief Chitwood moves to dismiss Johnson's *Monell* claim against him on the ground that it is duplicative of the claim against the City. In his response to Defendants' motion to dismiss, Johnson acknowledges that his claim against Chief Chitwood is legally the same as his claim against the City and agrees to its dismissal. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity"). As a result, Count III will be dismissed.

The City also moves to dismiss Johnson's *Monell* claim against it, arguing that Johnson cannot state a claim for municipal liability. Under § 1983, a municipality such as the City is only responsible for the unconstitutional conduct of its officers when the municipality itself caused the constitutional violation. *Skop*, 485 F.3d at 1145. A municipality causes a constitutional violation when it acts "pursuant to [an] official municipal policy of some nature." *Monell v. Dep't of Social Servs. of NY*, 436 U.S. 658,

691 (1978). Therefore, a plaintiff who intends to impose liability against a municipality must show a "direct causal link" between a municipal policy and his constitutional injuries. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Municipal policy can come in different forms. Intuitively, the most obvious examples are officially promulgated ordinances, rules, regulations, codes, or a decision rendered by a policymaker. *See, e.g.*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *Monell*, 436 U.S. at 694–95. Less-than-formal policies may subject a municipality to liability as well, such as when the plaintiff's constitutional injuries are caused by an unofficial custom or practice that is so well-settled, permanent, pervasive, and wide-spread "that it takes on the force of the law." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999)). Additionally, a municipality's failure to train or supervise its employees regarding their duty not to violate citizens' constitutional rights can also rise to the level of policy where the municipality tacitly approves of or shows deliberate indifference toward police misconduct. *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987). Ultimately, however, a municipality cannot be held liable under § 1983 for conduct of which its officials were unaware; instead, the plaintiff must show that municipal officials had actual or constructive knowledge of the misconduct, but that they failed to take corrective action. *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Johnson alleges that the City failed to adequately train and supervise its officers with respect to making lawful arrests and the appropriate use of force, and otherwise permitted a culture of constitutional violations. In support, Johnson cites twenty-four instances of founded misconduct by Officer Biddix, Officer Harris, and Sergeant Blowers, in which the officers had previously been disciplined for using excessive force, for

falsifying arrest affidavits and police reports, and for failing to follow proper police practices. (Doc. 1, ¶ 29). Despite the City's actual knowledge about this laundry list of founded misconduct by the officers, the City continued to employ the officers on the date at issue. (*Id.* ¶¶ 9–12). The Court can therefore reasonably infer that the City was deliberately indifferent to the violation of citizens' constitutional rights. As a result, the Court will not dismiss Count II.

> **C.    Whether Officer Biddix, Officer Harris, Sergeant Blowers, and Chief Chitwood are Entitled to Individual Immunity on Johnson's State Law Tort Claims (Counts XIII–XX and XXII)**

Next, Officer Biddix, Officer Harris, Sergeant Blowers, and Chief Chitwood move to dismiss Johnson's state tort claims against them on the ground that they are entitled to individual immunity under Florida law. Florida's sovereign immunity statute shields police officers from personal liability in tort for injuries or damages they cause while acting within the scope of their employment. Fla. Stat. § 768.28(9)(a). Like qualified immunity under federal law, when individual immunity under § 768.28(9)(a) attaches, the police officer is protected not just from liability, but from being sued for state tort claims. *Furtado v. Yun Chung Law*, 51 So. 3d 1269, 1277 (Fla. Dist. Ct. App. 2011). However, this immunity from suit will not attach and a police officer may face personal liability for injuries and damages he causes where he "act[s] in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Officer Biddix, Officer Harris, Sergeant Blowers, and Chief Chitwood contend that the facts alleged in the Complaint fail to demonstrate the bad faith, malicious purpose, or wanton and willful conduct necessary to overcome their individual immunity.

Florida's sovereign immunity statute identifies three categories of conduct which will overcome a police officer's individual immunity: (1) bad faith, (2) malicious purpose,

and (3) wanton and willful disregard of human rights, safety, or property. Both bad faith and malicious purpose require a plaintiff to allege facts demonstrating that the officer acted with actual malice, *see Drudge v. City of Kissimmee*, 581 F. Supp. 2d 1176, 1195 (M.D. Fla. 2008), which requires a showing of "ill will, hatred, spite, [or] an evil intent," *Reed v. State*, 837 So. 2d 366, 369 (Fla. 2002) (quoting *State v. Gaylord*, 356 So. 2d 313, 314 (Fla. 1978)). Alternatively, "[f]or conduct to be willful and wanton, it must be shown that the defendant knew, or reasonably should have known . . . , that his [or her] conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences." *Gregory v. Miami-Dade Cty.*, 86 F. Supp. 3d 1340, 1343 (S.D. Fla. 2015) (quoting *Lemay v. Kondrk*, 860 So. 2d 1022, 1025 (Fla. Dist. Ct. App. 2003) (Ofinger, J., dissenting)). Facts alleging the violation of constitutional rights by a police officer do not, on their own, demonstrate bad faith, malicious purpose, or wanton and willful conduct. *See Moore v. Seminole Cty.*, No. 6:13-cv-224-Orl-31GJK, 2014 WL 4278744, at *6 (M.D. Fla. Aug. 29, 2014), *aff'd*, 806 F.3d 1036 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 2014 (2016).

The facts contained in Johnson's Complaint specifically allege that Officer Biddix, Officer Harris, and Sergeant Blowers entered into an agreement and acted together to cover up their wrongful detention, arrest, assault, and battery of Johnson by agreeing to fabricate evidence, lying in police reports and court documents, and committing perjury by falsely attesting to the truth of the documents and contents therein. (Doc. 1, ¶¶ 49, 52–58, 64–65). The facts of the Complaint consequently go beyond mere allegations of constitutional violations, and instead show that the officers knew their conduct was illegal and that they attempted to conceal their malfeasance in order to escape punishment. Accordingly, the Court can reasonably infer that Officer Biddix, Officer Harris, and

Sergeant Blowers acted with bad faith, malicious purpose, or with wanton and willful disregard of Johnson's human rights and safety. These officers are therefore not entitled to individual immunity as to Johnson's state law claims against them.

Johnson also alleges sufficient facts indicating that Chief Chitwood is not entitled to individual immunity under Florida law. Johnson claims that, despite Chief Chitwood's knowledge that Officer Biddix, Officer Harris, and Sergeant Blowers had committed numerous constitutional violations in the past—including founded instances where the officers falsified police records, used excessive force, and failed to adhere to proper police practices—Chief Chitwood nevertheless continued to employ the officers. (Doc. 1, ¶¶ 29, 229–233). The Court can reasonably infer that Chief Chitwood's failure to act in these circumstances to prevent future misconduct constitutes wanton and willful disregard for human rights, safety, and property. Chief Chitwood is consequently not entitled to individual immunity either.

### D. Whether Johnson States a Claim for Negligent Supervision and Negligent Retention Against the City (Count XXI)

Lastly, the City moves to dismiss Johnson's negligent supervision and negligent retention claim on the ground that he cannot state a claim for relief. Specifically, the City argues that, as Officer Biddix's, Officer Harris', and Sergeant Blowers' employer, Johnson must show that the City had actual or constructive knowledge that the officers were unfit to work as police officers. *See M.V. ex rel. W.W. v. Gulf Ridge Council Boy Scouts of Am., Inc.*, 529 So. 2d 1248, 1248 (Fla. Dist. Ct. App. 1988). The City contends that, since it had no knowledge that any of the officers would commit the torts Johnson alleges they committed, Johnson cannot state a claim for negligent supervision or retention.

However, as explained previously, the City was on notice of numerous confirmed instances where Officer Biddix, Officer Harris, and Sergeant Blowers used excessive

force, falsified police documents, and departed from proper police practices. (Doc. 1, ¶ 29). Accordingly, the Court can reasonably infer that the City had actual knowledge that the officers were unfit for their employment and that this unfitness caused Johnson's injuries in this case. The Court will therefore not dismiss Johnson's negligent supervision and retention claim against the City.

## IV.   CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss the Plaintiff's Complaint (Doc. 19) is **GRANTED IN PART** and **DENIED IN PART**. Count III is **DISMISSED** and Counts VII and IX are **DISMISSED WITH PREJUDICE**. Defendants' motion is otherwise denied.

2. Defendants shall answer the remainder of Plaintiff's Complaint within **fourteen (14) days** of this Order.

**DONE AND ORDERED** in Orlando, Florida on January 12, 2017.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record